IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTINE WILLIAMS, )
)
Plaintiff, )
)
v. ) 1:18CV539
)
ANDREW SAUL, )
Commissioner of Social Security,[1] )
)
Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Christine Williams ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for SSI on February 27, 2014, alleging a disability onset date of January 4, 2008. (Tr. at 12, 214-19.)[2] Her claim was denied initially

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #8].

(Tr. at 78-90, 134-42), and that determination was upheld on reconsideration (Tr. at 91-108, 146-55). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 156-58.) Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing on March 16, 2017. (Tr. at 12.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 22-23), and, on April 21, 2018, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since February 27, 2014, her application date.[5] Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> morbid obesity, status-post recent gastric bypass surgery; status-post right ankle tendon lengthening surgery and Achilles rupture repair; degenerative disc disease; carpal tunnel syndrome, status-post surgeries; arthritis; degenerative

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] In his decision, the ALJ noted that Plaintiff had filed an earlier claim, and "[o]n September 7, 2012, an Administrative Law Judge (ALJ) issued an unfavorable decision. On December 18, 2013, the Appeals Council denied [Plaintiff's] request for review." (Tr. at 12 (internal citations omitted).) The ALJ in the present case found "no basis to reopen this decision." (Tr. at 12.) Therefore, the ALJ considered the period beginning with the date of Plaintiff's current application on February 27, 2014. Plaintiff does not challenge that determination here.

joint disease; hyperlipidemia; generalized anxiety disorder; bipolar disorder; obsessive-compulsive disorder; [and] post-traumatic stress disorder (PTSD)[.]

(Tr. at 14-15.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 15-17.) Therefore, the ALJ assessed Plaintiff's RFC as follows:

> [She can] perform sedentary work as defined in 20 CFR 416.967(a), with the following provisos: [Plaintiff] is limited to occasionally pushing, pulling, and/or operating foot controls with the lower extremities. She is limited to frequently using her upper extremities for pushing, pulling, operating hand controls, reaching, handling, fingering, and/or feeling. [Plaintiff] can occasionally climb ramps and stairs, but can never climb ladders, ropes[,] or scaffolds. She can occasionally balance, stoop, kneel, [and] crouch, but never crawl. She must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. [Plaintiff] is able to understand and perform simple, routine, repetitive tasks and maintain concentration, persistence, and pace to stay on task for 2-hour periods over the course of a typical 8-hour workday, in a low-stress setting, which is further defined to mean no production-pace or quota-based work; rather, she requires a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional changes in the work setting, and she is limited to occasional social interaction with supervisors and co-workers, but no work with the public as part of the job, such as sales or negotiation, though incidental or casual contact as it might arise is not precluded.

(Tr. at 17.) At step four of the analysis, the ALJ determined that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 21.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 21-22.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 22-23.)

Plaintiff now raises two challenges to the ALJ's decision. First, she contends that the ALJ erred by failing to perform a function-by-function analysis of relevant, contested

functions when assessing Plaintiff's RFC in violation of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"). Second, she argues that that the ALJ who issued her administrative decision was not constitutionally appointed. Therefore, she asserts that her case merits remand under the Appointments Clause. After a thorough review of the record, the Court finds that neither of Plaintiff's claims require remand.

A. Function-by-Function Assessment

As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. SSR 96-8p, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, No. 12-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would

prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio, 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637; see Monroe v. Colvin, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis because ALJ also erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

In the present case, Plaintiff contends that the ALJ failed to adequately explain why he omitted both a sit/stand option and a leg elevation accommodation from Plaintiff's RFC, "despite the objective and subjective evidence in support of such accommodations." (Pl.'s Br. [Doc. #11] at 13.) However, the ALJ considered all of the evidence and explained his determination at length, considering Plaintiff's testimony, the medical record evidence, and the opinion evidence. Specifically with respect to the sit/stand option, the ALJ explained that Plaintiff previously filed a claim, and in the prior ALJ decision in that claim, the ALJ found that Plaintiff "had the residual functional capacity to perform work at less than the full range

8

of the light exertional level with a sit/stand option at 30 minute[] intervals." (Tr. at 20.) However, "[s]ince this decision, new and material evidence in the treatment record supports additional severe physical impairments and subsequent surgeries." (Tr. at 20.) Therefore, the ALJ found that "[a]s discussed throughout this decision, [Plaintiff] is more appropriately limited to the sedentary exertional level" with the additional limitations noted in the RFC. (Tr. at 20.) The ALJ then specifically explained that a sit/stand option was not included in the RFC because it was "not a necessary corollary to her functional capacity once restricted to sedentary work duty," rather than light work as in the prior decision. (Tr. at 20.) Thus, the ALJ fully explained his reasoning, finding that a sit-stand option was not necessary given the restriction to sedentary work. That determination was supported by substantial evidence set out at length in the decision. Moreover, even if there were some error in the ALJ's failure to include a sit/stand option, the vocational expert at Plaintiff's hearing testified that a sit/stand option would still be consistent with the sedentary jobs he identified at step five of the sequential analysis, meaning that an individual performing those jobs could sit or stand at will at her workstation. (Tr. at 70-71.) This testimony, to which Plaintiff raises no objection, renders harmless any error regarding the omission of a sit/stand option from the RFC.

Plaintiff's further argument is equally unpersuasive. Specifically, Plaintiff contends that her ankle complaints established a need to elevate her right lower extremity during the workday, and that the ALJ erred by omitting such a limitation from the RFC without explanation. (Pl.'s Br. at 9-13.) Even accepting Plaintiff's hearing testimony in full, she fails to establish that such a limitation was warranted. When discussing the swelling issues with her right lower extremity that require elevation, Plaintiff testified as follows:

9

| | |
|---|---|
| A | If I'm on it for too long, it will swell and it'll start burning. |
| Q | About how long's loo long? How long's – do you know how long is too long on your foot? |
| A | About – about an hour/hour and a half. |
| Q | Okay. |
| A | And it'll start swelling and I have to elevate it. |

(Tr. at 50.) This testimony is also consistent with the medical record, which reflects that Plaintiff reported to her medical providers that she experienced swelling "after prolonged walking" in January 2015 (Tr. at 614), and that she could stand for 3.5 hours before her leg and ankle bothered her in March 2016 after her ankle surgeries. (Tr. at 1000.) As noted above, the ALJ ultimately limited Plaintiff to <u>sedentary</u> work, which, by definition, requires standing and walking only occasionally. <u>See</u> 20 C.F.R. 416.967(a); SSR 83-10, 1983 WL 31251, at *5 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles"). Thus, Plaintiff's contention that she needs to elevate her leg after standing or walking for an hour or an hour and a half, as asserted by Plaintiff during her testimony at the hearing, does not raise any limitation outside the RFC, since sedentary work would not require that level of standing and walking. There was no basis or need for the ALJ to further discuss this issue, since he concluded that the greater limitation to sedentary work was appropriate given Plaintiff's additional impairments and subsequent surgeries (Tr. at 20). Moreover, even if the limitation to sedentary work, in and of itself, somehow failed to prevent Plaintiff from remaining on her feet for an hour or more in a given workday, the vocational expert testified that all of the positions identified at step five were

10

consistent with a sit/stand option, which would allow Plaintiff to sit at will. Accordingly, as with Plaintiff's sit/stand contention, any error on this point is harmless.

B. Appointments Clause

In her next argument, Plaintiff, citing Lucia v. Securities & Exch. Comm., 585 U.S. ___, 138 S. Ct. 2044 (2018), seeks a new hearing on the grounds that the ALJ who issued her administrative decision was not constitutionally appointed. In considering this contention, the Court notes that similar claims have been considered and rejected in prior cases in this District:

> In Lucia v. Securities and Exchange Commission, the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. 138 S. Ct. at 2055. While this issue has not been addressed by the Fourth Circuit Court of Appeals, District Courts within the Circuit have held under Lucia that only "one who makes a timely [Appointment Clause] challenge" is entitled to relief. See e.g., Garrison v. Berryhill, No. 1:17-CV-00302-FDW, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) (citing Lucia, 138 S. Ct. at 2055) (internal citation omitted); see also Britt v. Berryhill, No. 1:18-CV-00030-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018) ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."). In Lucia, the Supreme Court acknowledged the challenge was timely because it was made before the Commission.
>
> Plaintiff's arguments to the contrary are unpersuasive. Although it is not required for one to raise a constitutional issue solely before the ALJ, Lucia made it clear that one must challenge their issue at some point during the administrative proceedings. Lucia v. S.E.C., 138 S. Ct. at 2055 ("To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Lucia is entitled."). Unfortunately, Plaintiff did not raise this issue at any point during his proceedings with the Social Security Administration—not to the presiding ALJ, or to the Appeals Counsel. To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited his Appointment Clause issue by failing to raise it during his administrative proceedings.

Martin v. Berryhill, No. 1:18CV115, Report and Recommendation (M.D.N.C. Dec. 11, 2018) (Webster, M.J.), adopted by Order (M.D.N.C. Jan. 4, 2019) (Eagles, J.); see also Smith v.

Berryhill, No. 1:18CV329, Report and Recommendation (M.D.N.C. April 23, 2019) (Webster, M.J.), adopted by Judgment (M.D.N.C. May 10, 2019) (Biggs, J.).

In the present case, as in Martin and Smith, Plaintiff has forfeited her Appointments Clause issue by failing to raise it during her administrative proceedings. This determination is consistent with the great weight of authority since Lucia. See, e.g., Lewark v. Saul, No. 2:18-CV-45, 2019 WL 2619370 (E.D.N.C. June 26, 2019); Morrison v. Berryhill, No. 5:18-CV-156, 2019 WL 2607026 (W.D.N.C. June 25, 2019); Edwards v. Berryhill, No. 2:18CV121, 2019 WL 1919167, at *4 (E.D. Va. Apr. 29, 2019); Shelton v. Berryhill, No. 2:17CV609, 2019 WL 1330897, at *11-12 (E.D. Va. Mar. 25, 2019); Shipman v. Berryhill, No. 1:17-CV-00309-MR, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019); Velasquez v. Berryhill, No. CV 17-17740, 2018 WL 6920457, at *3 (E.D. La. Dec. 17, 2018); Abbington v. Berryhill, No. CV 1:17-00552-N, 2018 WL 6571208, at *8 (S.D. Ala. Dec. 13, 2018); Weatherman v. Berryhill, No. 5:18-CV-00045-MOC, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018); Pearson v. Berryhill, No. 17-4031-SAC, 2018 WL 6436092, at *4 (D. Kan. Dec. 7, 2018); Faulkner v. Comm'r of Soc. Sec., No. 117CV01197STAEGB, 2018 WL 6059403, at *3 (W.D. Tenn. Nov. 19, 2018); Flack v. Comm'r of Soc. Sec., No. 2:18-CV-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018); Garrison v. Berryhill, No. 1:17cv302, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018); Davidson v. Comm'r of Soc. Sec., No. 2:16CV102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018); Stearns v. Berryhill, No. C17-2031, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018); Karen S. v. Comm'r of Soc. Sec., No. 2:17CV302, 2018 WL 4053327, at *3 n.1 (E.D.

Wash. Aug. 24, 2018); Trejo v. Berryhill, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). Therefore, Plaintiff's claim should be dismissed.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 6th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[6] Notably, several of these cases are presently on appeal to their respective Courts of Appeal, including Shelton v. Berryhill (E.D. Va.), on appeal to the Fourth Circuit, No. 19-1715 (4th Cir.). Even more notably, two recent decisions in the Eastern District of North Carolina have reached the opposite conclusion, and found that an Appointments Clause challenge need not be raised in the administrative proceeding, that the plaintiff's Lucia claim was not forfeited, and that remand was required. See Probst v. Berryhill, No. 5:18CV130, 2019 WL 1749135 (E.D.N.C. March 22, 2019); Bradshaw v. Berryhill, 372 F. Supp. 3d 349 (E.D.N.C. 2019). Those decisions are also on appeal to the Fourth Circuit. Bradshaw v. Berryhill, No. 19-1531 (4th Cir.), Probst v. Berryhill, No. 19-1529 (4th Cir.) Given these developments, it would be within the discretion of the Court to elect to stay the present case pending resolution of those issues by the Fourth Circuit. However, the present Recommendation has been entered in light of the prior decisions in this District in Martin and Smith and in order to address the additional, non-Lucia claims presented for resolution.

13